**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**NO. 5:23-CV-00493-FL**

| | | |
|---|---|---|
| INTERDIGITAL INC., | ) | |
| INTERDIGITAL VC HOLDINGS, INC., | ) | |
| INTERDIGITAL PATENT HOLDINGS, | ) | |
| INC., and | ) | |
| INTERDIGITAL MADISON PATENT | ) | |
| HOLDINGS SAS, | ) | OPPOSITION TO MOTION TO |
|        Plaintiffs, | ) | DISMISS AND MOTION TO |
|    v. | ) | STRIKE |
| | ) | |
| LENOVO GROUP LIMITED, | ) | |
| LENOVO (UNITED STATES) INC., and | ) | |
| MOTOROLA MOBILITY LLC, | ) | |
|        Defendants. | ) | |
| | ) | |

## LENOVO (UNITED STATES) INC. AND MOTOROLA MOBILITY LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AND MOTION TO STRIKE

1

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................... 1

II.   NATURE OF THE CASE ........................................................................ 2

III.  STATEMENT OF FACTS ....................................................................... 3

IV.   LEGAL STANDARDS ............................................................................ 3

      A.    Rule 12(b)(6) Motion to Dismiss Standards ................................. 3

      B.    Rule 12(f) Motion to Strike Standards ......................................... 4

V.    Dismissal of Lenovo's APAA CounterClaim Is Unwarranted ............ 4

      A.    Count III Sufficiently Pleads that InterDigital Is Not an Operating Entity Under the APAA ................................................................................. 5

            1.    InterDigital's Interpretation of Subsection (a) Would Make the APAA a Dead Letter .................................................................... 7

            2.    InterDigital Is Not Primarily Engaged in Research and Technical or Experimental Work to Create, Test, Qualify, Modify, or Validate Technologies or Processes for Commercialization of Goods or Services 10

            3.    InterDigital's Remaining Arguments Are Meritless ............... 13

      B.    Dismissal with Prejudice Is Unwarranted ................................. 14

VI.   InterDigital's Rule 12(f) Motion to Strike Should Be Denied Because Paragraph 190 and Exhibit G Reflect InterDigital's Bad-Faith Assertion of the Asserted Patents ................. 15

      A.    Paragraph 190 and Exhibit G Are Highly Probative of InterDigital's Bad-Faith Assertion of the Asserted Patents ......................................... 16

      B.    Compromise Offers and Negotiations Are Admissible to Show Bad Faith Under the Exception to Rule 408 ............................................................. 17

      C.    InterDigital's Allegations of Prejudice and Lenovo's Bad Faith Are Irrelevant .. 19

VII.  CONCLUSION .................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................3, 6

*Athey v. Farmers Ins. Exch.*,
   234 F.3d 357 (8th Cir. 2000) ...................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................3, 4, 6

*Bir v. McKesson Corp.*,
   No. 5:22-CV-00412-M, 2023 WL 5960640 (E.D.N.C. Sept. 13, 2023)...................20

*Brown & Williamson Tobacco Corp. v. United States*,
   201 F.2d 819 (6th Cir.1953) ...................................................15

*Cambria Co. LLC v. Hirsch Glass Corp.*,
   No. 21-10092, 2023 U.S. Dist. LEXIS 175833 (D.N.J. Sept. 29, 2023) ................21

*Chapman v. Oakland Living Ctr., Inc.*,
   No. 1:18 CV 345, 2019 U.S. Dist. LEXIS 109231 (W.D.N.C. July 1, 2019) ........19

*Clark v. Absolute Collection Serv., Inc.*,
   741 F.3d 487 (4th Cir. 2014) .....................................................9

*Clerveaux v. E. Ramapo Cent. Sch. Dist.*,
   984 F.3d 213 (2d Cir. 2021)......................................................18

*Duncan v. Walker*,
   533 U.S. 167 (2001).............................................................9

*First Fin. Sav. Bank v. American Bankers Ins. Co.*,
   783 F. Supp. 963 (E.D.N.C. 1991)..............................................4, 5

*Frye Reg'l Med. Ctr., Inc. v. Hunt*,
   350 N.C. 39, 510 S.E.2d 159 (1999)............................................8

*Godfredson v. JBC Leg. Group, P.C.*,
   387 F. Supp. 2d 543 (E.D.N.C. 2005).........................................20

*Haught v. Louis Berkman, LLC*,
   377 F. Supp. 2d 543 (N.D.W. Va. 2005) .......................................4

1

*Jeffrey v. Mid-Atlanticare South LLC*,
  No. 5:11-CV-549-BO, 2012 U.S. Dist. LEXIS 59763 (E.D.N.C. Apr. 30,
  2012) ........................................................................................................................18

*Johnson v. BAC Home Loans Servicing, LP*,
  No. 5:10-CV-271-F, 2011 WL 223874 (E.D.N.C. Jan. 21, 2011)...........................................15

*Kungys v. United States*,
  485 U.S. 759 (1988)........................................................................................................9

*Lane v. Endurance Am. Specialty Ins. Co.*,
  No. 3:10-CV-401-MOC-DCK, 2011 U.S. Dist. LEXIS 40869, 2011 WL
  1343201 (W.D.N.C. April 8, 2011) ...................................................................................4

*Miller v. Ingles*,
  No. CIV. 1:09CV200, 2009 WL 4325218 (W.D.N.C. Nov. 24, 2009) ...................................15

*N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Dana*,
  379 N.C. 502, 866 S.E.2d 710 (2021).................................................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .........................................................................................4, 7

*Olin Corp. v. Ins. Co. of North America*,
  603 F.Supp. 445 (S.D.N.Y.1985)......................................................................................16

*Oset v. Interstate Brokerage of S.E., Inc.*,
  No. 5:99-CV-185-BO(2), 1999 WL 33236225, (E.D.N.C. Nov. 30, 1999),
  *aff'd*, 238 F.3d 413 (4th Cir. 2000) ...............................................................................15, 16

*Ostrzenski v. Seigel*,
  177 F.3d 245 (4th Cir. 1999) ..........................................................................................14

*Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P.*,
  625 F. Supp. 3d 1289 (N.D. Ga. 2022)..............................................................................21

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*,
  227 F. App'x. 239 (4th Cir. 2007).....................................................................................19

*Republican Party of N. Carolina v. Martin*,
  980 F.2d 943 (4th Cir. 1992) ............................................................................................4

*Simaan, Inc. v. BP Prod. N. Am.*,
  Inc., 395 F. Supp. 2d 271 (M.D.N.C. 2005) ......................................................................17

*State v. Gaines*,
  332 N.C. 461, 421 S.E.2d 569 (1992).................................................................................8

*State v. Rankin*,
  371 N.C. 885, 821 S.E.2d 787 (2018)......................................................................8

*State v. Tew*,
  326 N.C. 732, 392 S.E.2d 603 (1990)......................................................................8

*Staton v. Dollar Tree, Inc.*,
  No. 2:08CV350, 2008 WL 11383389 (E.D. Va. Dec. 11, 2008)...........................19

*Tivoli Realty Inc. v. Paramount Pictures, Inc.*,
  80 F. Supp. 800 (D. Del. 1948)..............................................................................20

*TM, LLC v. Anderson*,
  No. 2:11-CV-00071-FL, 2012 WL 4483180 (E.D.N.C. Sept. 27, 2012) ...............18

*Towerridge, Inc. v. T.A.O., Inc.*,
  111 F.3d 758 (10th Cir. 1997) ...............................................................................18

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
  252 F.3d 316 (4th Cir. 2001) ............................................................................2, 15

*Wells v. Liddy*,
  186 F.3d 505 (4th Cir. 1999) ...................................................................................7

*Whitmire v. Southern Farm Bureau Life Insurance Co.*,
  52 F.4th 153 (4th Cir. 2022) ....................................................................................7

*Woods v. City of Greensboro*,
  855 F.3d 639 (4th Cir. 2017) ...................................................................................4

**Statutes**

N.C. Gen. Stat. § 75-140 *et seq.*............................................................... *passim*

## I. INTRODUCTION

This litigation is precisely the type of bad-faith patent assertion from a non-practicing entity that the North Carolina legislature contemplated when enacting the North Carolina Abusive Patent Assertion Act ("APAA"). The above captioned plaintiffs (collectively, "InterDigital") are not operating entities under the APAA. InterDigital is not in the business of creating, i.e., commercializing, products to bring to market. InterDigital is not in the business of manufacturing goods. InterDigital is not in the business of selling goods or services. Rather, InterDigital is in the business of asserting patents. InterDigital pushes industry standard setting organizations ("SSOs") to incorporate its patented inventions into standards, and then demands outsized royalties from companies that implement those standards in real products and services. InterDigital, therefore, is not an operating entity and, thus, is subject to the APAA.

InterDigital's motion to dismiss should be denied because Lenovo (United States) Inc. and Motorola Mobility LLC's (collectively, "Lenovo") Count III of its amended counterclaims contains sufficient factual matter to state a claim that is plausible on its face. Lenovo properly alleged facts showing InterDigital's assertion of the patents in this litigation is in bad-faith and that InterDigital does not qualify as an operating entity based on its generalized research and development efforts in conjunction with its participation in SSOs. Seeking to avoid the plain language of the APAA, InterDigital's motion to dismiss rests on a strained interpretation that would make the APAA a dead letter. North Carolina courts would reject such an interpretation because it is contrary to the purpose of the APAA. Lenovo, therefore, requests the Court reject InterDigital's interpretation and deny InterDigital's motion to dismiss.

As to the motion to strike, such "motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant

1

simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Here, Paragraph 190 and Exhibit G of Lenovo's counterclaims are probative of InterDigital's bad-faith assertion of its patents in this litigation and therefore, are material, pertinent, and admissible under the exception found in Fed. R. Evid. 408(b). InterDigital's motion has little to do with removing surplus material from the pleadings and everything to do with obscuring InterDigital's bad faith. InterDigital's motion to strike, therefore, should be denied.

## II. NATURE OF THE CASE

On September 1, 2023, InterDigital accused Lenovo of infringing United States Patent Nos. 10,250,877; 8,674,859; 9,674,556; 9,173,054, and 8,737,933. ECF No. 1, ¶ 2. InterDigital filed a companion case before the United States International Trade Commission ("ITC") asserting the same patents against Lenovo on September 1, 2023. ECF No. 14-1.

Lenovo answered the complaint and filed a motion to dismiss certain counts under Rule 12(b)(6). ECF Nos. 13, 16-1. InterDigital amended its complaint on October 31, 2023. ECF No. 20. The same day, InterDigital moved to dismiss one of Lenovo's counterclaims. ECF No. 21. Lenovo answered the amended complaint and asserted various counterclaims. ECF No. 27. A series of amendments and motions culminated in InterDigital again moving to dismiss Lenovo's counterclaim alleging that InterDigital violated the North Carolina Abusive Patent Assertions Act, N.C. Gen. Stat. § 75-143, *et seq.*, and moving to strike paragraph 190 and Exhibit G of Lenovo's answer and counterclaims. ECF No. 35.

## III.     STATEMENT OF FACTS

InterDigital is a well-funded non-practicing patent assertion entity that "derives revenues primarily from licensing [its] patented innovations."  ECF No. 27-6 (Ex. F) at 5.  Rather than performing research and development to design and develop goods and services, InterDigital spends its time with industry standard setting organizations working to define standards so that they arguably can read on InterDigital's patents.  After declaring its patents "essential" to implementations of these standards (sometimes unilaterally), InterDigital then demands outrageous royalty payments from companies that develop products that practice those standards.

Lenovo is one of those companies from which InterDigital has demanded royalties for allegedly practicing certain industry standards.  While the instant case is just one litigation in a long-running global dispute, InterDigital's allegations here are particularly troubling given InterDigital's admission of the value of the five asserted patents.  *See* ECF Nos. 27 at ¶ 190, 27-7 (Ex. G) at 4.  Lenovo alleges that at least these representations, together with InterDigital's concurrent filing of an ITC investigation and request for monetary and injunctive relief in this Court amount to a bad-faith patent assertion by InterDigital under the APAA.

## IV.     LEGAL STANDARDS

### A.     *Rule 12(b)(6) Motion to Dismiss Standards*

To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level."

3

*Twombly*, 550 U.S. at 555.  In evaluating whether a plausible claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  "The question is not whether the defendant will ultimately prevail but whether the complaint was sufficient to cross the federal court's threshold." *Woods v. City of Greensboro*, 855 F.3d 639, 652–53 (4th Cir. 2017) (cleaned up).

### B.      Rule 12(f) Motion to Strike Standards

Rule 12(f) empowers courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  But a motion to strike defenses is "a drastic remedy . . . and is infrequently granted."  *First Fin. Sav. Bank v. American Bankers Ins. Co.*, 783 F. Supp. 963, 966 (E.D.N.C. 1991).  The burden of proof on a motion to strike lies with the moving party.  *Haught v. Louis Berkman, LLC*, 377 F. Supp. 2d 543, 548 (N.D.W. Va. 2005).  Motions to strike are not favored, and any doubts about whether the motion should be granted should be resolved in favor of the non-moving party.  *See Lane v. Endurance Am. Specialty Ins. Co.*, No. 3:10-CV-401-MOC-DCK, 2011 U.S. Dist. LEXIS 40869, 2011 WL 1343201, at *2-3 (W.D.N.C. April 8, 2011).

## V.      DISMISSAL OF LENOVO'S APAA COUNTERCLAIM IS UNWARRANTED

In 2014, North Carolina's General Assembly enacted legislation aimed at curtailing bad-faith patent assertions by non-practicing entities called the Abusive Patent Assertions Act

("APAA"). N.C. Gen. Stat. § 75-140 *et seq.* The General Assembly found that "North Carolina has a strong interest in patent matters involving its citizens and its businesses, including protecting its citizens and businesses against abusive patent assertions and ensuring North Carolina companies are not subjected to abusive patent assertion by entities acting in bad faith." N.C. Gen. Stat. § 75-141(a)(8). To that end, the APAA declares, "It is unlawful for a person to make a bad-faith assertion of patent infringement" and enumerates a dozen factors for evaluating bad faith. *Id.* at § 75-143. Count III of Lenovo's counterclaims sufficiently pleads that InterDigital has made a bad-faith assertion of patent infringement. Notably, InterDigital does not challenge the sufficiency of the pleadings and factual support for Lenovo's allegation that InterDigital has made a bad-faith assertion of patent infringement.

Instead, InterDigital attempts to defend against this allegation by arguing the APAA does not apply because it is an "operating entity" that is outside the reach of the APAA. *Id.* at § 75-143(c)(4). The Court should deny InterDigital's motion to dismiss for three independent reasons. *First*, Lenovo's Count III provides sufficient factual support to show InterDigital is not an "operating entity." *Second*, North Carolina courts would reject InterDigital's interpretation of the APAA. *Third*, InterDigital does not show sufficient factual support for its theory in the pleadings and any dispute about the factual support would be resolved in Lenovo's favor at the motion to dismiss stage.

### A. Count III Sufficiently Pleads that InterDigital Is Not an Operating Entity Under the APAA

Paragraphs 181 to 186 in Count III of Lenovo's amended counterclaims allege that InterDigital is not an operating entity that falls outside the scope of the APAA at least because it is not "primarily engaged" in any qualifying activity. ECF No. 27 at ¶¶ 181-86. These

paragraphs include more than the formulaic recitation of the elements of the claim because they disclose the fact that InterDigital's research and development efforts are directed to participation in SSOs—not commercialization of goods or services—and are directed, at least in part, to bolstering InterDigital's patent portfolio—not creating, testing, qualifying, modifying, or validating technologies as the APAA requires. *Id.* at ¶¶ 183-86. Thus, Lenovo's Count III contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). InterDigital's motion, therefore, should be denied.

InterDigital has not shown otherwise and instead wrongly interprets the APAA to qualify as an "operating entity" that falls outside the APAA's reach. But the APAA's definition of "operating entity" distinguishes entities that develop, make, and sell goods and services from non-practicing entities like InterDigital. To qualify as an "operating entity" under the APAA, the entity (and its affiliates) must be "primarily engaged" in at least one of three activities. N.C. Gen. Stat. § 75-142(5). First, the entity may be primarily engaged in research and technical or experimental work directed to specific product development tasks. Qualifying "[r]esearch and technical or experimental work" is work "to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." *Id.* § 75-142(5)(a). Second, the entity may be primarily engaged in "[m]anufacturing." *Id.* § 75-142(5)(b). Third, the entity may be primarily engaged in "[t]he provision of goods or commercial services." *Id.* § 75-142(5)(c).

InterDigital concedes it does not qualify under the "manufacturing" or "provision[ing] of goods or commercial services" options. ECF No. 35 ("Motion") at 1, 8. Thus, whether InterDigital is an "operating entity" turns on whether InterDigital and its affiliates are "primarily engaged" in "[r]esearch and technical or experimental work to create, test, qualify, modify, or

validate technologies or processes for commercialization of goods or services" under subsection (a).

The North Carolina legislature narrowly delineated the research and technical or experimental work option. Not all "research and technical or experimental work" under subsection (a) transforms an entity into an operating entity. To qualify under subsection (a), the work must be "to create, test, qualify, modify, or validate technologies or processes" and must be conducted "for commercialization of goods or services." As Lenovo's Count III alleges, InterDigital does not qualify given the narrow scope of qualifying research and technical or experimental work under subsection (a). ECF No. 27 at ¶¶ 181-86. These facts, taken as true at the motion to dismiss stage, are sufficient to overcome InterDigital's motion to dismiss. *Nemet Chevrolet*, 591 F.3d at 255 ("[The] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]").

## 1. InterDigital's Interpretation of Subsection (a) Would Make the APAA a Dead Letter

InterDigital's argument relies on a strained interpretation of the APAA. When called upon to interpret a North Carolina statute, the Court must use the interpretative methodology of the Supreme Court of North Carolina. *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). The interpretative framework in North Carolina is purposivism. *See Whitmire v. Southern Farm Bureau Life Insurance Co.*, 52 F.4th 153, 157 (4th Cir. 2022). The Supreme Court of North Carolina explained how courts should apply purposivism to interpret state statutes: "courts should always seek to give effect to the legislative intent, which may be discerned by consideration of the purpose of the statute, 'the evils it was designed to remedy, the effect of proposed interpretations of the statute, and the traditionally accepted rules of statutory

7

construction.'" *State v. Gaines*, 332 N.C. 461, 469, 421 S.E.2d 569, 572 (1992) (*quoting State v. Tew*, 326 N.C. 732, 738, 392 S.E.2d 603, 607 (1990)).  The objective of this methodology is to "to determine the meaning that the legislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889, 821 S.E.2d 787, 792 (2018).  The intention of the legislature is derived from "from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *Id.*  And "where [a] statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent." *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999).

The legislative history suggests the Court should interpret the "operating entity" exception narrowly.  On April 3, 2013, the Joint Legislative Economic Development and Global Engagement Oversight Committee submitted its report to the General Assembly of North Carolina which included the first draft of what would become the APAA.  Ex. A at 30-38 ("Legislative Report").  The relevant portions of the draft have nearly the same text as the enacted version except the draft does not include *any* exceptions for operating entities.  *Compare* Legislative Report at 33 (excluding limited activities under subsection (c)), *with* N.C. Gen. Stat. § 75-142(5) (adding to the list of exclusions under subsection (c) including for "operating entities").  Likewise, the committee analysis says the APAA exempts only "assertions of patent infringement concerning drugs and biological products regulated under the Food, Drug, and Cosmetic Act."  Legislative Report at 37.  And one motivation for the bill was the nearly 250% increase in "people or companies that misuse patents as a business strategy ('patent trolling') . . . ."  Legislative Report at 38.  Thus, from its start, the legislative intent reflects the broad applicability of the APAA and confirms that the legislature sought to address the increase in patent assertions from non-practicing patent assertion entities, i.e., "patent trolls."

8

InterDigital proposes an interpretation of the "operating entity" exception that would inevitably swallow the rule, rendering the APAA a dead letter. Such an interpretation cannot be correct because it is inconsistent with the purpose of the APAA and undermines its legislative intent. Specifically, InterDigital asks the Court to adopt an expansive interpretation of subsection (a) that would allow all "research and development activities" to qualify if these activities are "generally *for the purpose* of commercialization of goods and services *by anyone*." Mot. at 9 (emphasis in original). Under InterDigital's interpretation, every non-practicing patent assertion entity could perform nominal "research and development" activities with an aspirational goal that any third-party may commercialize its technology in the future. Even this hypothetical non-practicing patent assertion entity would qualify as an operating entity. Such an interpretation cannot be correct as it renders the APAA superfluous, void, and insignificant. *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 491 (4th Cir. 2014) ("If possible, a court should avoid an interpretation that renders any 'clause, sentence, or word ... superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

InterDigital's interpretation would also violate "the cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant" by failing to give meaning to the two additional limitations about research and technical or experimental work. *Kungys v. United States*, 485 U.S. 759, 778 (1988); *see also N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Dana*, 379 N.C. 502, 510, 866 S.E.2d 710, 716 (2021) ("Courts should give effect to the words actually used in a statute and should neither delete words that are used nor insert words that are not used into the relevant statutory language during the statutory construction process."). A proper interpretation of subsection (a) must give meaning to the qualifications in subsection (a) that the research and technical or experimental work is "to create, test, qualify,

modify, or validate technologies or processes" and is "for commercialization of goods or services." InterDigital's interpretation reads these requirements out of the APAA, and thus, must be rejected.

## 2. InterDigital Is Not Primarily Engaged in Research and Technical or Experimental Work to Create, Test, Qualify, Modify, or Validate Technologies or Processes for Commercialization of Goods or Services

Under the proper interpretation of the APAA, InterDigital cannot identify any factual support in the pleadings to demonstrate its research and development efforts qualify under either limitation found in subsection (a). First, InterDigital does not show what amount, if any, of its research and development effort is "for commercialization of goods or services" as subsection (a) requires. Second, InterDigital does not show what amount, if any, of its research and development effort is "to create, test, qualify, modify, or validate technologies or processes" as subsection (a) requires. Because InterDigital has not shown any factual basis in the pleadings tending to show the extent to which its generalized research and development effort qualifies under subsection (a)—and much less whether InterDigital is primarily engaged in those activities—InterDigital cannot show it is an operating entity under the APAA. As a result, InterDigital's motion to dismiss must be denied.

### a) InterDigital Fails to Show Its Research and Development Effort Is "For Commercialization of Goods or Services"

First, InterDigital does not identify any factual basis in the pleading to show that its research and development effort is "for commercialization of goods or services" as subsection (a) requires. Instead, InterDigital argues its generalized participation in SSOs demonstrates its research and development effort is for commercialization of goods and services. Mot. at 12-13. But merely participating in SSOs does not mean an SSO has adopted any contributions to any

10

standard that InterDigital may have proposed. InterDigital does not name any industry standard in the pleadings that has implemented any of InterDigital's "research and technical or experimental work." And even if InterDigital could point to such a standard, that would merely reflect a factual dispute that the Court must resolve in Lenovo's favor.

Further, subsection (a) requires the "research and technical or experimental work" to be directed to "goods or services" and not merely industry standards. Assuming, *arguendo*, that a SSO adopted an InterDigital contribution—a factual issue InterDigital does not identify in the pleadings—this still fails to show its research and development effort was actually commercialized in any goods or services because InterDigital's licensees pay royalties based on use of industry standards and not specifically for InterDigital's patents or technology. InterDigital's public disclosures explain that "[a]lmost all of [InterDigital's] patent license agreements" are based on sales of products that are "designed to operate in accordance with particular standards (convenience-based licenses)" and not whether the "product infringes one of [InterDigital's] patents (infringement-based licenses)." ECF No. 27-6 (Ex. F) at 7. Thus, even if InterDigital might argue at summary judgment or trial that its participation in SSOs should be considered as evidence that its research and development effort is "for commercialization of goods or services" as subsection (a) requires, InterDigital has not identified any factual basis for this contention in the pleadings that warrants considering these arguments as part of a motion to dismiss. InterDigital simply fails to identify any factual support from the pleadings showing its research and development work has been commercialized by anyone.

Moreover, even if *some* of InterDigital's research and development finds its way into third-party goods and services, that is insufficient to establish that InterDigital is an operating entity. Under the APAA, InterDigital must show that it is "primarily engaged" in the research

11

and technical or experimental work qualifying under subsection (a). InterDigital has identified

no factual support from the pleadings that would disaggregate its research and development

efforts to show what portion, if any, is devoted to participation in SSOs or what portion that is

directed to "commercialization of goods or services." InterDigital, therefore, cannot identify any

support from the pleadings show it qualifies as an operating entity under the APAA.

**b)  InterDigital Fails to Disaggregate Its Research and Development Efforts**

Second, to qualify as research and technical or experimental work under subsection (a),

the work must be "to create, test, qualify, modify, or validate technologies or processes[.]"

InterDigital never argues or shows factual support from the pleadings to establish that its

research and development is directed to these activities. Instead, InterDigital refers to its

"research and portfolio development expenses." Mot. at 3, 4. But InterDigital never shows any

factual support in the pleadings to disaggregate its "research and portfolio development

expenses" to show whether the expenses include non-qualifying activities commonly performed

at non-practicing patent assertion entities (such as patent mining, patent prosecution support,

patent litigation support, product teardowns, reverse engineering, and similar non-qualifying

activities). Instead, InterDigital lumps everything together. To substantiate its research and

development efforts, InterDigital claims it has 425 employes. Mot. at 4. But that includes all

InterDigital employees—not just those allegedly devoted to research and development. ECF No.

27-6 (Ex. F) at 12. Indeed, InterDigital's public disclosures aggregates "research" and "portfolio

development" expenses which likely includes many of the non-qualifying activities noted above.

*Id.* at 68. Thus, as Lenovo alleged in Count III of its counterclaims, InterDigital cannot identify

any factual support from the pleadings showing what portion of its research and development

12

efforts is devoted to qualifying activities under subsection (a), and therefore, the pleadings do not show InterDigital is "primarily engaged" in those activities.

### 3.    InterDigital's Remaining Arguments Are Meritless

InterDigital raises a number of other arguments suggesting it should qualify as an operating entity.  None justifies the relief InterDigital seeks.  First, InterDigital mischaracterizes Lenovo's argument and argues subsection (a) does not require InterDigital to *actually* commercialize goods and services.  That is not Lenovo's argument.  Second, InterDigital argues its size, revenue, and sophistication should render it an operating entity.  They do not.  Third, InterDigital argues Lenovo "admitted" InterDigital's research and development effort qualifies under subsection (a).  It has not.

First, InterDigital argues subsection (a) does not include an "implied requirement" that InterDigital and its affiliates must "be engaged in '[t]he provision of goods and or commercial services" that incorporate qualifying "[r]esearch and technical or experimental work" under subsection (a).  *See* Mot. at 9-14.  Lenovo agrees that subsection (a) does not include a requirement that InterDigital and its affiliates must participate in the provision, i.e., sales, of goods and services, which is covered by subsection (c) that InterDigital concedes it does not meet.  *Id.* at 1, 8.  But just because InterDigital and its affiliates need not sell the goods and services under subsection (a) does not mean InterDigital need not have *any* relationship to the commercialization of goods and services.  To the contrary, the plain language of subsection (a) defines the required relationship as explained above.  Lenovo has not argued that InterDigital's failure to provision goods or services—all by itself—is disqualifying under subsection (a).

Second, InterDigital references its size and revenue to distinguish it from other non-practicing patent assertion entities that, even InterDigital must concede, fall within the scope of

13

the APAA.  *Id.* at 3 (citing revenue figures and net worth); *id.* at 14.  InterDigital's theory that its

size and revenue qualify it as an operating entity has no basis in the APAA—InterDigital does

not identify any legislative intent to support its contention.  Indeed, it is quite the opposite.  The

statute contemplates that large non-practicing patent assertion entities, like InterDigital, may

assert bad-faith patent claims that are subject to the APAA and makes an allowance for these

larger, more sophisticated entities.  For example, the Court may waive the bond requirement for

these entities.  N.C. Gen. Stat. § 75-144(b).  Thus, the APAA anticipated that entities like

InterDigital would be subject to its provisions.  There is no exception for *large* non-practicing

patent assertion entities that nevertheless engage in abusive patent assertion just because they are

big.

Third, Lenovo did not "admit" that InterDigital engaged in qualifying activities listed in

subsection (a).  Mot. at 1, 9, 10, 12.  Rather, Lenovo expressly disputed this fact.  ECF No. 27 at

¶ 183.

### B.    *Dismissal with Prejudice Is Unwarranted*

InterDigital's request for dismissal with prejudice rests on the same incorrect

interpretation of subsection (a) by which *all* of InterDigital's research and development efforts

amount to "[r]esearch and technical or experimental work to create, test, qualify, modify, or

validate technologies or processes for commercialization of goods or services."  N.C. Gen. Stat.

§ 75-142(5)(a).  For the reasons explained above, InterDigital's expansive interpretation of this

subsection is contrary to the "cardinal rule" of statutory interpretation and would make the

APAA a dead letter.  In the Fourth Circuit, the "the court normally will give plaintiff leave to file

an amended complaint" in light of "the federal rule policy of deciding cases on the basis of the

substantive rights involved rather than on technicalities."  *Ostrzenski v. Seigel*, 177 F.3d 245, 252

14

(4th Cir. 1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed 1990)); *see also Johnson v. BAC Home Loans Servicing, LP*, No. 5:10-CV-271-F, 2011 WL 223874, at *5 (E.D.N.C. Jan. 21, 2011) (dismissing without prejudice because such amendments would not be futile). Consequently, if the Court dismisses Lenovo's counterclaim, Lenovo requests such dismissal be without prejudice and with leave for Lenovo to amend Count III of its counterclaims because further amendments are not futile.

## VI. INTERDIGITAL'S RULE 12(F) MOTION TO STRIKE SHOULD BE DENIED BECAUSE PARAGRAPH 190 AND EXHIBIT G REFLECT INTERDIGITAL'S BAD-FAITH ASSERTION OF THE ASSERTED PATENTS

InterDigital's motion to strike has little to do with eliminating surplus or scandalous matter from Lenovo's counterclaims. The purpose of the motion is to shield direct evidence of InterDigital's bad-faith. The Court should deny that request. In the Fourth Circuit, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings*, 252 F.3d at 347. Because Paragraph 190 and Exhibit G are probative of InterDigital's bad-faith assertion of its patents, they are material, pertinent, and admissible under the exception to Fed. R. Evid. 408(b). There is no dispute that this material does not contain any scandalous matter—and InterDigital does not suggest otherwise. InterDigital's motion to strike, therefore, amounts to nothing more than a highly disfavored dilatory tactic and should be denied. "A pleading should only be stricken when the pleading bears no relationship to the controversy." *Miller v. Ingles*, No. CIV. 1:09CV200, 2009 WL 4325218, at *6 (W.D.N.C. Nov. 24, 2009) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953)).

The court's denial of a nearly identical request in *Oset v. Interstate Brokerage of S.E., Inc.,* confirms InterDigital's motion to strike should be denied. No. 5:99-CV-185-BO(2), 1999

WL 33236225, at *3 (E.D.N.C. Nov. 30, 1999), *aff'd*, 238 F.3d 413 (4th Cir. 2000). In *Oset*, the court denied a Rule 12(f) motion to strike two paragraphs of a complaint that contained settlement discussions. *Id.* The court held that striking the settlement discussion must be denied because the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 *et seq.*, allows the court to award attorney fees if the party charged with the violation made an "unwarranted refusal [] to fully resolve the matter." *Id.* Consequently, the settlement discussions were relevant to the merits of the attorney fee request, and this should not be stricken. *Id.*

The reasons to deny InterDigital's motion to strike here are even more compelling than in *Oset*. In *Oset,* the court found the "unwarranted refusal" element was similar to findings of "bad faith" that other courts relied upon when denying motions to strike. *Id.* (*citing Olin Corp. v. Ins. Co. of North America*, 603 F.Supp. 445 (S.D.N.Y.1985)). Here, bad faith is an express element of a violation under the APAA. N.C. Gen. Stat. § 75-143 (a) ("It is unlawful for a person to make a bad-faith assertion of patent infringement."). Further, both the UDTPA and APAA fall within Chapter 75 of the North Carolina Statutes, which relates to consumer protection, and thus, confirms the applicability of *Oset* within this statutory framework.

### A. *Paragraph 190 and Exhibit G Are Highly Probative of InterDigital's Bad-Faith Assertion of the Asserted Patents*

InterDigital's argument that Paragraph 190 and Exhibit G are "immaterial and impertinent" rises and falls with whether InterDigital qualifies as an operating entity under the APAA. Mot. at 16, 17. This material, therefore, should not be stricken because "a motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material

16

may prejudice the other party." *See Simaan, Inc. v. BP Prod. N. Am.*, Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005). InterDigital does not meet this high standard here.

When properly interpreted, Paragraph 190 and Exhibit G are highly material to showing InterDigital's bad faith and constitute direct evidence of InterDigital's demands for a monetary amount that is not based on a reasonable estimate of the value of the license for the asserted patents. Under the APAA, the Court may consider the fact that InterDigital is seeking a compulsory license via its litigation "for an amount that is not based on a reasonable estimate of the value of the license" and that InterDigital offers to "license the patent for an amount that is based on the cost of defending a potential or actual lawsuit." N.C. Gen. Stat. § 75-143(5). Paragraph 190 and Exhibit G support Lenovo's allegations that InterDigital has asserted its patents against Lenovo in bad faith because InterDigital is seeking monetary damages that exceed prior estimates of the value of those patents and confirm the relief is based on the costs of defending the lawsuit. *See* ECF No. 27 at ¶ 190; ECF No. 27-7 (Ex. G) at 4 (regarding the valuation of the implementation patents). Because InterDigital is not an operating entity exempt from the APAA (as discussed in detail above), the factual allegations in Paragraph 190 and Exhibit G are material and pertinent to showing InterDigital's infringement allegations reflect bad faith. InterDigital's attempt to obscure these bad-faith valuations for an amount that is not based on a reasonable estimate of the value of the license to the asserted patents should be rejected.

### B. Compromise Offers and Negotiations Are Admissible to Show Bad Faith Under the Exception to Rule 408

Paragraph 190 and Exhibit G fall within the exception under Fed. R. Evid. 408(b), which deems compromise offers and negotiations admissible to show bad faith. *Clerveaux v. E.*

*Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 243 (2d Cir. 2021) ("evidence of settlement negotiations may be used to demonstrate bad faith."); *see also Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (rejecting the contention that Rule 408 barred admission of evidence on settlement, the court held, "Towerridge offered the evidence to show it was not at fault for any delay and to show T.A.O. acted in bad faith. Accordingly, the district court did not abuse its discretion in allowing the testimony at issue[.]"); *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (settlement offer admitted to prove bad faith). Similarly, because InterDigital will have the opportunity to challenge the admissibility of the evidence under Rule 408 in due course, it's admissibility challenge and allegations of prejudice do not call for striking now. *See TM, LLC v. Anderson*, No. 2:11-CV-00071-FL, 2012 WL 4483180, at *11 (E.D.N.C. Sept. 27, 2012). As noted above, Paragraph 190 and Exhibit G are probative of InterDigital's bad faith assertion of the asserted patents, and therefore, are admissible under Rule 408(b)'s exception. InterDigital's request to shield this evidence by striking Paragraph 190 and Exhibit G, therefore, is unwarranted.

InterDigital's reliance upon decisions striking settlement discussions in other courts does not compel a similar result here. First, InterDigital's reliance upon *Jeffrey v. Mid-Atlanticare South LLC*, No. 5:11-CV-549-BO, 2012 U.S. Dist. LEXIS 59763, at *6–7 (E.D.N.C. Apr. 30, 2012) is misplaced. In *Jeffrey*, the plaintiff offered a pretextual basis to disclose compromise offers and negotiations in its complaint. *Id.* at *5. The court, however, recognized this pretext as a "thinly veiled attempt to skirt the boundaries of exclusion under Rule 408." *Id.* at *6. Here, whether InterDigital's patent infringement allegations are in bad faith is foundational to Lenovo's APAA claims. Next, in *Chapman v. Oakland Living Ctr., Inc.*, the court struck a letter related to settlement discussions not due to Rule 408 but rather because the "[c]omplaint d[id]

not mention, much less rely upon, the Letter, and information regarding prefiling settlement discussions otherwise appear[ed] to be immaterial[.]"  No. 1:18 CV 345, 2019 U.S. Dist. LEXIS 109231, at *2–3 (W.D.N.C. July 1, 2019).  In contrast here, InterDigital's prior valuations of the asserted patents reveal its patent infringement allegations are in bad faith.  Similarly, in *Staton v. Dollar Tree, Inc.*, the court struck the statement in the complaint that the plaintiff rejected a $500.00 settlement offer.  No. 2:08CV350, 2008 WL 11383389, at *8-9 (E.D. Va. Dec. 11, 2008).  Notably, in <u>*Staton*</u>, the motion to strike was unopposed and the court did not explain the basis for its decision.  *Id.*  Here, Lenovo does not seek to disclose the value of any settlement offer but only that InterDigital demands relief in an amount that is not based on a reasonable estimate of the value of the license to the asserted patents.  Finally, in *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, the court held the district court did not abuse its direction by excluding evidence simply because it "was not probative" of the underlying issues.  227 F. App'x. 239, 247–48 (4th Cir. 2007).  Moreover, the Fourth Circuit held that the district court was correct to consider the statements within the context of a settlement discussion for purposes other than the merits of the action, including to show the intent of a party.  *Id.*  Lenovo seeks to use the material in Paragraph 190 and Exhibit G in essentially the same way, to show bad faith.  Thus, none of InterDigital's case law justifies striking Paragraph 190 and Exhibit G given their confirmation that InterDigital's allegations are brought in bad faith.

### C.     *InterDigital's Allegations of Prejudice and Lenovo's Bad Faith Are Irrelevant*

InterDigital argues that alleged prejudice it suffered due to an alleged breach of a non-disclosure agreement independently justifies striking Paragraph 190 and Exhibit G.  Mot. at 16.  But Rule 12(f) does not list "prejudice" as an independent basis for striking a pleading.  *See* Rule 12(f) ("The court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter.").  Similarly, InterDigital has not provided any authority suggesting that prejudice is sufficient to strike a pleading under Rule 12(f) and Lenovo is not aware of any such authority.  Indeed, in addition to showing the material is "redundant, immaterial, impertinent, or scandalous" InterDigital must also identify "significant prejudice" flowing from the presence of the material in the pleadings—which it cannot do.  *See, e.g., Bir v. McKesson Corp.*, No. 5:22-CV-00412-M, 2023 WL 5960640, at *4 (E.D.N.C. Sept. 13, 2023); *see also Godfredson v. JBC Leg. Group, P.C.*, 387 F. Supp. 2d 543, 547–48 (E.D.N.C. 2005) (finding Rule 12(f) motions to strike "have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party." (*quoting Tivoli Realty Inc. v. Paramount Pictures, Inc.*, 80 F. Supp. 800, 803 (D. Del. 1948)).

Regardless, Lenovo also disputes its filing of Paragraph 190 and Exhibit G under seal amounts to a breach of a non-disclosure agreement between InterDigital, Inc. and Lenovo (United States) Inc.  In fact, as Exhibit G explains, InterDigital is the party that first referenced discussions between representatives that were intended to be "off-limits for any correspondence or court filings," and thus the material may not be confidential information under paragraph 4 of the non-disclosure agreement.  ECF No. 27-7 (Ex. G) at 3; ECF No. 35-1 (Ex. 1) at 3, ¶ 4.  Moreover, the parties agreed "the state and federal courts in the State of Delaware shall have exclusive jurisdiction over any claim, suit or proceeding (each, a 'Proceeding') related to this agreement (including without limitation the breach or threaten breach thereof)[.]"  ECF No. 35-1 (Ex. 1) at 5, ¶ 11.  Thus, seeking relief in this Court based on the alleged breach of the non-disclosure agreement is improper.  The Court, therefore, need not and ought not, entertain InterDigital's request to evaluate compliance with the non-disclosure agreement.

Likewise, InterDigital's allegation that Lenovo has engaged in bad faith is irrelevant to a motion to strike under Rule 12(f). In *Redstone M&A Group*, the court considered the bad faith of a party to award attorney's fees—not a Rule 12(f) motion to strike. *Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P.*, 625 F. Supp. 3d 1289, 1315 (N.D. Ga. 2022) ("LaSalle's conscious doing of wrong is therefore sufficient to constitute bad faith, and for that reason, the Court finds that Redstone is entitled to attorney's fees.").

And there is no parallel between Lenovo's conduct and the bad-faith conduct in *Redstone M&A Group* or in *Cambria Co. LLC*, as InterDigital suggests. Mot. at 18. In *Redstone M&A Group*, the relevant party never read the non-disclosure agreement, made no efforts to follow an anti-circumvention provision, and knowingly breached the agreement despite later subjective awareness of the agreement. *Id.* at 1314-15. In *Cambria Co. LLC v. Hirsch Glass Corp.*, one of the parties involved in confidential settlement negotiations fashioned a complaint based on that confidential material and filed the complaint publicly in another district. No. 21-10092, 2023 U.S. Dist. LEXIS 175833, at *9-10 (D.N.J. Sept. 29, 2023). Not so here. Lenovo reasonably understood InterDigital no longer considered certain negotiations "off-limits" and took affirmative steps to limit any disclosure of the information out of an abundance of caution by filing Paragraph 190 and Exhibit G under seal. *See* ECF No. 28. Notably, in *Cambria Co. LLC*, the court recognized that filing a document under seal—as Lenovo did here—is sufficient to maintain confidentiality. *Cambria Co. LLC*, U.S. Dist. LEXIS 175833 at *13-14. Thus, InterDigital's allegation that Lenovo engaged in bad faith is both irrelevant to a motion to strike under Rule 12(f) and factually baseless.

21

In sum, Paragraph 190 and Exhibit G are probative of InterDigital's bad-faith assertion of its patents, and they are material, pertinent, and admissible under the exception in Fed. R. Evid. 408(b).  InterDigital's motion to strike, therefore, should be denied.

## VII.    CONCLUSION

Defendants Lenovo (United States) Inc. and Motorola Mobility LLC respectfully oppose Plaintiffs' Rule 12(b)(6) Motion to Dismiss With Prejudice and Rule 12(f) Motion to Strike Portions of the Allegations in Count III of Lenovo's Amended Counterclaims.

This 2nd day of January 2024.

                                    /s/ Adam Shartzer
                                    Raymond M. Bennett (NC Bar No. 36341)
                                    WOMBLE BOND DICKINSON (US) LLP
                                    555 Fayetteville Street, Suite 1100
                                    Raleigh, NC 27601
                                    Telephone: 919-755-2158
                                    Facsimile: 919-755-6068
                                    Ray.Bennett@wbd-us.com

                                    Jacob S. Wharton (NC Bar No. 37421)
                                    WOMBLE BOND DICKINSON (US) LLP
                                    One West 4th St.
                                    Winston-Salem, NC 27601
                                    Telephone: 919-747-6609
                                    Jacob.Wharton@wbd-us.com

                                    Adam Shartzer
                                    FISH & RICHARDSON P.C.
                                    1000 Maine Ave SW
                                    Washington, D.C.  20024
                                    Telephone: 202-626-6380
                                    shartzer@fr.com
                                    *Special Appearance Pursuant to L.R. 83.1*

                                    Jack R. Wilson IV
                                    FISH & RICHARDSON P.C.

1000 Maine Ave SW
Washington, D.C.  20024
Telephone: 202-626-6415
jwilson@fr.com
*Special Appearance Pursuant to L.R. 83.1*
*Forthcoming*

*Attorneys for Defendants*

*Lenovo Group Limited*
*Lenovo (United States) Inc.*
*Motorola Mobility LLC*