IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-493-FL

| | |
|---|---|
| INTERDIGITAL, INC.; INTERDIGITAL VC HOLDINGS, INC.; INTERDIGITAL PATENT HOLDINGS, INC.; INTERDIGITAL MADISON PATENT HOLDINGS SAS,<br><br>    Plaintiffs,<br><br>    v.<br><br>LENOVO (UNITED STATES) INC., MOTOROLA MOBILITY LLC, and LENOVO PC HK LIMITED,<br><br>    Defendants. | REDACTED ORDER |

This matter is before the court upon motion by plaintiffs (collectively, "InterDigital")[2] to dismiss and to strike part of the counterclaims of defendants Lenovo (United States) Inc. and

---

[1] Where the court's order references a sealed pleading, the parties are DIRECTED to file jointly under seal, within 14 days, a copy of this order marked to reflect any perceived necessary redactions with the words "Proposed Redacted" affixed to the captioned title. Upon the court's inspection and presuming its approval, redacted copy of this order, as proposed by the parties in accordance with controlling authorities, will be made a part of the public record. If upon its review the court determines a different approach other than what is proposed may be necessary, notice will be given. If the parties jointly determine no redaction is warranted, they are DIRECTED to file jointly, within the same time a notice to that effect. In that event, the clerk will solicit the court's approval to unseal this order.

[2] The parties subject to the instant motion refer to themselves in their pleadings and briefs, respectively, in the singular, with plaintiffs referenced as "InterDigital" and defendants Lenovo (United States) Inc. and Motorola Mobility LLC as "Lenovo." For ease of reference and consistency with the parties' references, for purposes of this order, the court also adopts these references insofar as further differentiation of the parties is not necessary for the instant analysis. Defendant Lenovo PC HK Limited filed separate answer and counterclaims and did not join in the instant briefing with Lenovo.

Motorola Mobility LLC (together, "Lenovo"). (DE 75). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling.[3] For the following reasons, the motion is denied.

## STATEMENT OF THE CASE

InterDigital commenced this patent infringement action September 1, 2023, and filed the operative second amended complaint February 16, 2024,[4] asserting that Lenovo is infringing InterDigital's patents, which "generally relate to video encoding/decoding ('CODEC') technology, which helps facilitate the transfer of video media to and from electronic devices," and file-sharing "technology that allows mobile device users to transfer data between devices without using pre-existing cellular or network infrastructure." (Compl. (DE 64) ¶ 33). Claims in the instant case are based upon United States Patent Nos. 10,250,877, (the "'877 Patent"), 8,674,859 (the "'859 Patent"), 9,674,556 (the "'556 Patent"), 9,173,054 (the "'054 Patent"), and 8,737,933 (the "'933 Patent") (collectively, the "asserted patents" or "InterDigital's patents"). InterDigital alleges that Lenovo produces "smartphones, computers, and tablet computers" that use the "technology covered in InterDigital's patents." (Id. ¶ 58). InterDigital seeks judgment of infringement, compensatory damages, enhanced damages for willful infringement, permanent injunction, attorneys' fees, costs, and expenses.

Lenovo filed the operative amended answer and counterclaims March 1, 2024. As pertinent here, Lenovo's third counterclaim (the "counterclaim")[5] is based upon the North Carolina

---

[3] Also pending, but not yet ripe, is a motion for judgment on the pleadings by Lenovo PC HK Limited, filed February 23, 2024, (DE 69), which will be addressed by separate order.

[4] Hereinafter, all references to the complaint in the text, or "compl." in citations, are to the operative second amended complaint (DE 64), unless otherwise specified.

[5] Hereinafter, all references to the counterclaim are to the operative amended third counterclaim (DE 71), unless otherwise specified.

Abusive Patent Assertions Act, N.C. Gen. Stat. § 75-143(a) ("APAA"). Lenovo claims that InterDigital's assertion of patent infringement in the instant case is "abusive and made in bad faith" in violation of the APAA. (Counterclaim ¶ 183).

InterDigital filed the instant motion March 15, 2024, to dismiss Lenovo's counterclaim for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). InterDigital further moves to strike paragraph 190 and Exhibit G of the counterclaim for improper use of confidential material covered by a non-disclosure agreement between the parties (the "NDA"). (DE 75). InterDigital relies upon a declaration of Ryan W. Koppelman, counsel for InterDigital, attaching a copy of the NDA. (DE 34-1, 35-1).[6] Lenovo responded in opposition, relying upon a "Joint Legislative Economic Development and Global Engagement Oversight Committee Report to the 2013-2104 General Assembly of North Carolina." (DE 47-1). InterDigital then replied in support of the instant motion.

Pursuant to the court's case management order entered November 30, 2023, the parties have filed a joint claim construction statement March 18, 2024, and they are due to conclude claim construction discovery by April 17, 2024, and file opening claim construction briefs by May 2, 2024.

## STATUTORY FRAMEWORK

To provide context to the court's statement of facts and the analysis herein, the court first sets forth the following summary of the statutory framework under APAA. The APAA, enacted in 2014, makes it unlawful in North Carolina "for a person to make a bad-faith assertion of patent infringement." N.C. Gen. Stat. § 75-143(a). It directs the court to "consider the following factors

---

[6] Where InterDigital's prior motions to dismiss were denied as moot twice upon filing of amended complaints and counterclaims, not impacting the substance of the motions, the parties filed a joint notice on March 15, 2024, stating that they rely upon their prior briefs and exhibits thereto in lieu of refiling briefs.

3

as evidence that a person has made a bad-faith assertion of patent infringement," as pertinent to the counterclaim asserted by Lenovo:

> (2) Prior to sending the demand, the person failed to conduct an analysis comparing the claims in the patent to the target's products, services, and technology, or the analysis was done but does not identify specific areas in which the products, services, and technology are covered by the claims in the patent. . . .
>
> (5) The person offers to license the patent for an amount that is not based on a reasonable estimate of the value of the license, or the person offers to license the patent for an amount that is based on the cost of defending a potential or actual lawsuit.
>
> (6) The claim or assertion of patent infringement is meritless, and the person knew or should have known that the claim or assertion is meritless . . . .
>
> (9) The person making the claim or assertion sent the same demand or substantially the same demand to multiple recipients and made assertions against a wide variety of products and systems without reflecting those differences in a reasonable manner in the demands. . . .
>
> (11) The person making the claim or assertion seeks an injunction when that is objectively unreasonable under the law.

Id. The APAA provides for a private right of action and remedies including equitable relief, damages, attorneys' fees, and trebled damages. Id. § 75-145(b).

As pertinent here, the APAA also sets forth four categories of circumstances in which it "does not apply," comprising a demand letter or assertion of patent infringement: 1) arising under six different enumerated federal statutes, 2) by or on behalf of an institution of higher education, 3) by or on behalf of a nonprofit research organization, and 4) "made by an operating entity or its affiliate." Id. § 75-145(c). With respect to the fourth exclusion category, APAA defines "operating entity" as follows:

> A person primarily engaged in, when evaluated with its affiliates over the preceding 24-month period and when disregarding the selling and licensing of patents, one or more of the following activities:

4

a. Research and technical or experimental work to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services;

   b. Manufacturing; or

   c. The provision of goods or commercial services.

Id. § 75-142(5).

## STATEMENT OF FACTS

According to the counterclaim, "prior to filing the Complaint, InterDigital failed to conduct an analysis sufficient to identity the specific areas in which the accused products, services, and technology are covered by the claims in the patent." (Counterclaim ¶ 187) This allegedly is "evidenced by, for example, the mapping of the asserted claims to an exemplary implementation rather than any specific features of the Accused Products." (Id.).

In addition, "InterDigital's attempts to license the Asserted Patents are for an amount that is not based on a reasonable estimate of the value of the license but instead on the cost of defending this litigation and the potential cost associated with Customs and Border Protection denying Lenovo products entry into the United States." (Id. ¶ 188). "InterDigital filed a Complaint before the International Trade Commission seeking an order excluding Lenovo products from entry based on alleged infringement of the same Asserted Patents." (Id.).

Further, according to the counterclaim, "until InterDigital brought this litigation it did not meaningfully value the Asserted Patents in negotiations and/or in multi-technology license agreements involving InterDigital patent portfolios with Lenovo." (Id. ¶ 189). Specifically, ███

███████ (Id. ¶ 190). ███

███████

5

███." (Id.). Allegedly, "InterDigital has engaged in similar conduct during negotiations with other potential and existing multi-technology licensees." (Id. ¶ 191). InterDigital's "shifting position on the valuations of the asserted patents" allegedly "reflects that its valuation for a license is not based on a reasonable estimate of the value of the license." (Id.)

Lenovo also asserts that "InterDigital's allegations of patent infringement are meritless, and InterDigital knew or should have known the assertion is meritless at least because the Asserted Patents are not infringed and are invalid." (Id. ¶ 192). In addition, InterDigital allegedly "made assertions against a wide variety of products and systems such as Lenovo smartphones, computers (including both laptop and desktop), and tablet computers without reflecting those differences in a reasonable manner." (Id. ¶ 193).

According to the counterclaim, "InterDigital's request for an injunction is objectively unreasonable under the law at least because InterDigital does not practice its patents, does not compete against Lenovo in any marketplace for smartphones, computers (including both laptop and desktop), or tablet computers, cannot show it will suffer irreparable harm, and cannot show that it lacks an adequate remedy at law sufficient to compensate for the alleged infringement." (Id. ¶ 194). Based on the foregoing, the counterclaim asserts that InterDigital's complaint reflects both objective and subjective bad faith.

According to the counterclaim, InterDigital is not subject to an exclusion under the APAA as an operating entity because it does not meet any of the requirements for this exclusion. Interdigital is not primarily engaged in manufacturing or the provision of goods or commercial services, where InterDigital allegedly "relies on its licensing efforts and not manufacturing or the provision of goods or commercial services to satisfy the domestic industry requirement for [the asserted] patents in co-pending Section 337 Investigation No. 1373." (Id. ¶ 182).

6

Likewise, Lenovo alleges that "[a]ny research, technical, or experimental work [of InterDigital] is not primarily 'for commercialization of goods or services' as would be required to qualify as an 'operating entity.'" (Id. ¶ 184). Lenovo summarizes and quotes from InterDigital's United States Securities and Exchange Commission Form 10-K ("10-K"), including the following excerpts:

> "InterDigital derives revenues primarily from licensing our patented innovations." Ex. F at 4; Id. at 4 ("InterDigital is one of the largest pure research and development and licensing companies in the world . . . ."); Id. ("Our strategy is to continue to be a leading innovator, designer and developer of fundamental, horizontal technologies and to monetize our patented innovations primarily through licensing the products and services that implement them across vertical markets."); Id. at 6 ("The majority of our revenue is generated from fixed-fee patent license agreements, with a smaller portion coming from variable royalty agreements"); Id. at 31 ("In 2022, fixed-fee royalties accounted for 90% of our recurring revenues. These fixed-fee revenues are not affected by the related licensees' success in the market or the general economic climate. The majority of the remaining portion of our recurring revenue was variable in nature due to the per-unit structure of the related license agreements."); Id. at 36 ("We derive the vast majority of our revenue from patent licensing.").

(Counterclaim ¶ 184).

In addition, according to the counterclaim, "InterDigital does not test all of its technology for commercial use." (Id. ¶ 185). InterDigital states in its 10-K that "certain of our technologies have not been fully tested in commercial use, and it is possible that they may not perform as expected." (Id.). InterDigital also allegedly "relies on licensees to implement its technology in commercial products." (Id. ¶ 186). It has stated, "[s]uccessful exploitation of our technology solutions is partially dependent on the establishment and success of relationships with equipment producers and other industry participants." (Id.).

7

## COURT'S DISCUSSION

A.  Motion to Dismiss

    1.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[7]

    2.  Analysis

InterDigital argues that the counterclaim must be dismissed because InterDigital is an operating entity excluded by the APAA. The court disagrees that dismissal under Rule 12(b)(6) is required on this basis.

As an initial matter, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "An affirmative defense is the defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the [claim] are true." Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 271 (4th Cir. 2003). Here, InterDigital's motion advances an

---

[7] Internal quotations and citations are omitted from case citations throughout this order unless otherwise specified.

affirmative defense because it raises, on the face of the motion, "new facts and arguments," id., namely that "InterDigital qualifies under the statutory definition of 'operating entities' because InterDigital engages in research and development activities for the purpose of commercialization." (Mot. (DE 34) at 2) (emphasis added).

InterDigital suggests that its lack of qualification as an operating entity is something that must be alleged by Lenovo as the party bringing the claim under the APAA. However, neither the North Carolina Supreme Court nor the United States Court of Appeals for the Fourth Circuit has set forth the elements for a claim based upon the APAA. Based upon its plain language, the affirmative prohibition in the statute is that "[i]t is unlawful for a person to make a bad-faith assertion of patent infringement." N.C. Gen. Stat. § 75-143(a). The statute then sets forth factors evidencing bad-faith, as well as factors evidencing a lack of bad faith. Id. § 75-143(a), (b). Separately, the statue sets forth four categories of circumstances in which it "does not apply," of which qualification as an "operating entity" is one. Id. § 75-143(c). Where InterDigital asserts in its own motion that it qualifies as an operating entity, this presents as an affirmative defense and not an element of a claim under the APAA.

InterDigital relies upon NAPCO, Inc. v. Landmark Tech. A, LLC, 555 F. Supp. 3d 189 (M.D.N.C. 2021), in support of its suggestion that it is necessary for a claimant to plead that a defendant of an APAA claim is not an operating entity. In fact, NAPCO supports the opposite conclusion, by stating that a claimant need only "allege those elements required by the Act itself, namely that they are a target or person aggrieved by a violation of the Act" as well as "objective and subjective bad faith." Id. at 205 and n. 4. Moreover, NAPCO does not address pleading standards for the operating entity exclusion in the statute. Accordingly, NAPCO is inapposite.[8]

---

[8] In its original motion to dismiss, InterDigital also relied upon Lafayette Fed. Credit Union v. United States, 76 F. Supp. 2d 645 (D. Md. 1999), for the proposition that Lenovo must plead that InterDigital is not an operating

9

In sum, InterDigital's suggestion that Lenovo must plead facts ruling out the operating entity exclusion in the statute is unavailing.

In addition, and in the alternative, Lenovo has stated a plausible claim that InterDigital is not an operating entity excluded by the APAA.[9] InterDigital contends that it is an operating entity under the first part of the statutory definition, for an entity primarily engaged in "[r]esearch and technical or experimental work to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a).[10] By its plain language, this part of the definition of an operating entity has three components. InterDigital must be "primarily engaged" in 1) "[r]esearch and technical or experimental work," 2) "to create, test, qualify, modify, or validate technologies or processes," 3) "for commercialization of goods or services." Id.

In this case, while the counterclaim readily acknowledges that InterDigital engages in "research and development" work, (Counterclaim ¶ 184), it suggests that such work is not "to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a). Summarizing and quoting excerpts from InterDigital's 10-K, Lenovo alleges that "InterDigital does not test all of its technology for commercial use," and "it is possible that [its technologies] may not perform as expected."

---

entity in order to state a claim under the APAA. However, Lafayette is distinguishable because it addresses pleading requirements for a claim under the "discretionary-function exception" to the waiver of sovereign immunity in the Federal Tort Claims Act. Id. at 652. In doing so, it applied Supreme Court and Fourth Circuit law applying such exception on a motion to dismiss. See, e.g., id. (citing United States v. Gaubert, 499 U.S. 315, 320 (1991)). There is no such case law applying the APAA exclusion on a motion to dismiss.

[9] Because Lenovo states a plausible claim for relief under the Iqbal/Twombly standard, the court does not reach the more onerous standard of dismissal based on an "affirmative defense clearly appear[ing] on the face of" the pleading. Goodman, 494 F.3d at 464 (emphasis added).

[10] InterDigital suggests that the other prongs of the operating entity definition are "not at issue here." (InterDigital Mem. (DE 35) at 14).

(Counterclaim ¶ 185). In addition, InterDigital's "revenues are not affected by the related licensees' success in the market." (Id. ¶ 184).

Likewise, Lenovo alleges that InterDigital's "technology solutions" are themselves "partially dependent on the establishment and success of relationships with equipment producers and other industry participants." (Id. ¶ 186). Lenovo thus suggests that this activity of developing these relationships is one-step removed from work undertaken "to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a). Further, Lenovo alleges "InterDigital relies on licensees to implement its technology in commercial products." (Counterclaim ¶ 186). InterDigital's "strategy is to be a leading innovator, designer and developer of fundamental, horizontal technologies and to monetize our patented innovations primarily through licensing the products and services that implement them across vertical markets." (Id. ¶ 184) (emphasis added). In other words, these allegations may tend to show that "the products and services" of other companies, not InterDigital, are necessary "to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a).

InterDigital argues that other statements in its 10-K support its contention that it is an operating entity, and that the court must accept these statements as true because they are integrated into the complaint by Lenovo's attachment of the 10-K. However, while the court may consider the 10-K on a motion to dismiss, "Rule 10(c) does not require a plaintiff adopt every word within the exhibits as true for purposes of pleading simply because the documents were [referenced in] the complaint to support an alleged fact." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). This is particularly true, where, as here, "the document is one prepared by or for the defendant" to the claim asserted. Id. at 168. "Such unilateral documents may reflect the

[counterclaim] defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the [counterclaim] plaintiff." Id.

Where the 10-K is a lengthy document that contains many self-serving statements of InterDigital, the court must be particularly mindful on a motion to dismiss to resolve any ambiguities and inferences in favor of Lenovo. See Id. ("[I]f a plaintiff attaches or references a report prepared by a third-party to show how he learned of certain facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the report."). It is necessary to "construe facts in the light most favorable to the [claimant] and draw all reasonable inferences in [its] favor." Id. at 169. [11]

Doing so here requires the court to resolve competing inferences and ambiguities in statements in the 10-K, at this juncture, in favor of Lenovo. For example, InterDigital points to statements in the 10-K that "InterDigital invests in research and development to 'design and develop advanced technologies that enable connected, immersive experiences in a broad range of communications and entertainment products and services'"; that InterDigital "presents its innovative technology to Standards Development Organizations (SDOs), which 'facilitate and govern the development of standards'"; and that "InterDigital's primary revenue source comes

---

[11] InterDigital cites Leifert v. Strach, 404 F. Supp. 3d 973 (M.D.N.C. 2019) for the proposition that a district court is "not required to accept as true the inconsistent allegations in [an] ... amended complaint, id. at 985; and Davis v. Univ. of N. Carolina at Greensboro, No. 1:19CV661, 2022 WL 3586093 (M.D.N.C. Aug. 22, 2022), for the proposition that "contradictory allegations . . . defeat a reasonable inference in the plaintiff's favor." Id. at *8. Neither case, however, addresses incorporation of a document written by a defendant into a plaintiff's pleading. Furthermore, the instant counterclaim does not allege inconsistent or contradictory facts in the manner of those described in Leifert or Davis. See, e.g., Davis, 2022 WL 3586093 *8 (noting the plaintiff alleged defendant "is both a public and private entity").

12

from other companies 'making, importing, using or selling products compliant with the standards." (InterDigital Mem. (DE 35) at 16 (quoting 10-K (DE 27-6) at 5, 7, and 9)).[12]

But these statements leave open issues, which cannot be resolved on a motion to dismiss, as to whether InterDigital meets all the facets of the exclusion. For example, to say that InterDigital designs "technologies <u>that enable</u> connected, immersive experiences in a broad range of communications and entertainment products and services," (InterDigital Mem. (DE 35) at 16 (quoting 10-K (DE 27-6) at 5) (emphasis added), leaves open the inference that InterDigital relies upon others "to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a). Likewise, to say that InterDigital "presents its innovative technology to Standards Development Organizations (SDOs)," which, in turn, themselves, "facilitate and govern the development of standards," (InterDigital Mem. (DE 35) at 16 (quoting 10-K (DE 27-6) at 9), suggests that those organizations, not InterDigital, are engaged in "validat[ing] technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a). Similarly, revenue primarily coming "from other companies 'making, importing, using or selling products <u>compliant with the standards</u>,'" (InterDigital Mem. (DE 35) at 16 (quoting 10-K (DE 27-6) at 7) (emphasis added), suggests an added step between InterDigital and the companies employing "technologies or processes for commercialization of goods or services." N.C. Gen. Stat. § 75-142(5)(a).

At bottom, while InterDigital contends it meets all the facets of the operating entity exclusion based upon its own description of its business in its 10-K, it is premature at this juncture to draw inferences from such description in InterDigital's favor. The court leaves for another day,

---

[12] Throughout this order, page numbers in citations to documents in the record, are to those specified by the court's Case Management / Electronic Case Filing ("CM/ECF") system, and not the page number, if any, showing on the face of the underlying document.

upon a more complete record regarding the meaning of the concepts and arrangements discussed in the 10-K, determination whether undisputed evidence requires treating InterDigital as an operating entity for purposes of the APAA.

InterDigital argues that "the legislative intent further supports InterDigital's status as an operating entity under the APAA." (InterDigital Mem. (DE 35) at 19). In particular, it asserts, the APAA "was not aimed at preventing multi-billion-dollar research and development companies like InterDigital from bringing legitimate patent infringement claims against notorious patent licensee holdouts like Lenovo, with whom InterDigital has attempted to negotiate in good faith for many years." (Id.). None of these assertions, however, are determinative for the instant motion to dismiss. While the APAA states that "abusive patent assertion entities who have limited liability . . . may hold no cash or other assets," N.C. Gen. Stat. § 75-141(a)(9), the operating entity exclusion does not turn on the size of the entity asserting a patent claim, nor the resistance to licensing by the party defending the claim. See id. § 75-142(5). In any event, InterDigital's introduction of new facts and characterization of the alleged facts in its favor precludes dismissal on this basis at this juncture.

Similarly, InterDigital argues that "Lenovo is an adjudicated infringer of InterDigital's valid and standard-essential patents, meaning Lenovo itself has commercialized InterDigital's R&D's efforts." (Reply (DE 51) at 7-8) (emphasis in original). This argument is unavailing on two levels. First, in support of this proposition, InterDigital relies upon a characterization of court decisions in its favor, which in turn are summarized in its own 10-K. (See id. at n. 2). This argument is thus twice removed from the facts alleged by Lenovo in its counterclaim, counseling against accepting all inferences drawn as true upon a motion to dismiss. See Goines, 822 F.3d at 167. Second, Lenovo's asserted infringement of other InterDigital patents does not necessarily

14

establish InterDigital's status as an operating entity. Rather, the counterclaim suggests there are multiple intervening steps between InterDigital's research and Lenovo's products. (See, e.g., Counterclaim ¶ 186 (alleging InterDigital's "technology solutions" are themselves "partially dependent on the establishment and success of relationships with equipment producers and other industry participants")). Where these intervening steps are viewed in the light most favorable to Lenovo, it has stated a plausible claim that InterDigital is not an operating entity under the meaning of the APAA.

Accordingly, that part of InterDigital's motion seeking to dismiss the counterclaim for failure to state a claim is denied.

B. Motion To Strike

   1. Standard of Review

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

Federal Rule of Evidence 408 restricts the use of evidence of "compromise offers and negotiations." In particular,

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim[.]

Fed. R. Evid. 408(a). Exceptions to this rule include that the "court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, [or] negating a contention of undue delay." Id. 408(b).

2. Analysis

InterDigital moves to strike paragraph 190 of the counterclaim, which provides:

. Exhibit G at 3. (Counterclaim ¶ 190). InterDigital also moves to strike Exhibit G, which provides, in pertinent part: "███████████████████████████████████████" (Counterclaim Ex. G (DE 71-7) at 4).

In this case, InterDigital has not met its burden of demonstrating that the "drastic remedy" of striking these portions of the counterclaim is warranted. Waste Mgmt. Holdings, Inc., 252 F.3d at 347. Critically, the allegations in paragraph 190 and quoted portions of Exhibit G are relevant to one factor supporting Lenovo's claim under the APAA, namely whether "[t]he person offers to license the patent for an amount that is not based on a reasonable estimate of the value of the license, or the person offers to license the patent for an amount that is based on the cost of defending a potential or actual lawsuit." N.C. Gen. Stat. § 75-143(5). As such these allegations are not "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

It is also premature to consider whether Exhibit G to the counterclaim properly is excluded as "evidence" other than "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). There are multiple considerations that bear upon the admissibility of a document as evidence, and the document incorporated into the pleadings at this stage of the case is not itself
16
Case 5:23-cv-00493-FL   Document 94   Filed 04/17/24   Page 16 of 20

evidence. Accordingly, the court declines to strike Exhibit G pursuant to Rule 408(a). The court expresses no opinion on the application of Rule 408(a) upon a more complete record.

InterDigital cites to cases that have recognized the propriety of striking references to settlement discussions in pleadings. The cited cases, however, are instructively distinguishable. For example, in Jeffrey v. Mid-Atlanticare S. LLC, No. 5:11-CV-549-BO, 2012 WL 1555480 (E.D.N.C. Apr. 30, 2012), the court rejected plaintiff's contention that allegations regarding settlement negotiations in an employment dispute were necessary to show bad faith and assert a right to treble damages. The court struck the allegations after observing that "North Carolina law requires not that the employee plead bad faith, but rather that the employer show good faith in order to avoid liquidated damages." Id. at *2. The court also noted that it had "insufficient evidence at this early stage of the proceeding to determine whether Maryland law would apply to the instant dispute," and it thus could not determine if bad faith was relevant under Maryland law. Id. In the instant case, by contrast, there is no question that bad faith is an element of a claim under the APAA, and the statute expressly provides that valuation of the patent is a factor. N.C. Gen. Stat. § 75-143(5). Accordingly, unlike in Jeffrey, striking the reference to settlement discussions on the basis of relevance is not warranted.

Similarly, in Chapman v. Oakland Living Ctr., Inc., 1:18-CV-345, 2019 U.S. Dist. LEXIS 109231 (July 1, 2019),[13] a magistrate judge addressed a motion to strike a letter attached to a pro se complaint, labeled "Letter from Defendants [sic] Attorney." Id. at *1. The court granted the motion, on the reasoning that "[p]laintiff's Complaint does not mention, much less rely upon, the Letter, and information regarding prefiling settlement discussions otherwise appears to be

---

[13] A Westlaw citation is not available for this decision.

immaterial at this time." Id. at *2. Chapman is thus inapposite because it does not address complaint allegations or exhibits that are relevant to an element of a claim.

In Cambria Co. LLC v. Hirsch Glass Corp., No. CV2110092MASJBD, 2023 WL 6387680, (D.N.J. Sept. 29, 2023), a magistrate judge addressed a motion to prohibit "further public disclosure of settlement communications in th[e] case," in the course of discovery. Id. at *1. The court noted "public disclosure of settlement-related communications was inappropriate, irresponsible, contrary to well-accepted practice, and beneath the dignity of sophisticated counsel engaged in complex federal civil litigation." Id. at *4. Cambria is inapposite because it does not address reference to settlement communications, when relevant to an issue of bad faith, in a pleading maintained under seal, as in the instant case. Indeed, the court in Cambria suggested that sealing such materials satisfies confidentiality concerns raised by disclosure. Id. at *5 ("[C]ourts in this district have sealed documents containing settlement discussions.").

InterDigital also asserts that Lenovo's allegations regarding Exhibit G are a violation of the NDA between the parties, and that this demonstrates both bad faith on the part of Lenovo, and prejudice on the part of InterDigital. InterDigital cites Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P., 625 F. Supp. 3d 1289 (N.D. Ga. 2022), for the proposition that a party's "apparent lack of even a particle of consideration of its obligations under [an] NDA evinces not just 'bad judgment' or 'negligence, but a conscious doing of wrong [and] is therefore sufficient to constitute bad faith." Id. at 1315. However, Redstone and this proposition are inapposite here for multiple reasons. First, the plaintiff in Redstone had brought a claim for breach of non-disclosure agreement, and the case was before the court following a bench trial and after ruling in the plaintiff's favor on cross-motions for summary judgment. Id. at 1294. Second, the cited proposition concerned a motion for attorney's fees after liability on the underlying claim had been

18

adjudicated in favor of the plaintiff. Id. Third, the court found that the defendant had used a confidential investment memorandum in another transaction. Id. None of these circumstances are present here. On the instant record, the court is not in a position to make a finding of Lenovo's "apparent lack of even a particle of consideration of its obligations" under the nondisclosure agreement, where it is not alleged to have used the information cited publicly or in another transaction. Id. at 1315. Moreover, InterDigital has not demonstrated how it will be prejudiced as long as issues pertaining to Exhibit G remain under seal and treated confidentially.

InterDigital suggests that it "cannot substantively respond" to the counterclaim "without violating the NDA," and that it "would be defenseless against Lenovo's false assertions unless InterDigital counters with even more NDA-covered material." (Reply (DE 51) at 12). This argument is unavailing at this juncture in the case. InterDigital has already filed an answer to Lenovo's counterclaim, including paragraph 190, which provides its defense for pleading purposes. (See DE 77 at 11). In the event there is a future point in this case when a more "substantive[e]" response becomes necessary, if at all, as InterDigital suggests, (Reply (DE 51) at 12), it may raise this issue in an appropriate motion or claim to protect its asserted interests under the NDA.

In sum, InterDigital has not demonstrated a basis for striking paragraph 190 or Exhibit G. Therefore its motion in this part is denied.

## CONCLUSION

Based on the foregoing, InterDigital's motion to dismiss and to strike is DENIED. Lenovo's counterclaim accordingly proceeds forward, in conjunction with others, in accordance with case management order entered November 30, 2023.

SO ORDERED, this the 25th day of March, 2024.

                                              LOUISE W. FLANAGAN
                                              United States District Judge